1

2

3

4

5

6

7

8                   **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11   VEVELYN JOHNSON,            )   NO. CV 08-05328 SS
                                 )
12               Plaintiff,      )
                                 )
13        v.                     )   **MEMORANDUM DECISION AND ORDER**
                                 )
14   MICHAEL J. ASTRUE,          )
     Commissioner of the Social  )
15   Security Administration,    )
                                 )
16               Defendant.      )
     _____ )
17

18

19                        **INTRODUCTION**

20

21        Vevelyn Johnson ("Plaintiff") brings this action seeking to

22   overturn the decision of the Commissioner of the Social Security

23   Administration (hereinafter the "Commissioner" or the "Agency") denying

24   her application for Supplemental Security Income ("SSI").  The parties

25   consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the

26   undersigned United States Magistrate Judge.  This matter is before the

27   Court on the parties' Joint Stipulation ("Jt. Stip.") filed on March 6,

28   2009.  For the reasons stated below, the decision of the Commissioner

     is AFFIRMED.

**PROCEDURAL HISTORY**

Plaintiff filed applications for SSI and Disability Insurances Benefits ("DIB") on August 8, 2006. (Administrative Record ("AR") 83, 88).[1] Plaintiff listed December 31, 1999 as the onset date of her disability.[2] (Id.). The Commissioner denied DIB benefits on August 13, 2006, (AR 48), and SSI benefits on September 21, 2006. (AR 52). Plaintiff submitted a request for reconsideration on November 1, 2006.[3] (AR 58). On January 11, 2007, the Commissioner denied reconsideration. (AR 60-64). Plaintiff requested a hearing before an administrative law judge ("ALJ") on February 12, 2007. (AR 66).

On November 21, 2007, Plaintiff's hearing proceeded before ALJ Jeffrey A. Hatfield. (AR 16). The ALJ rendered an unfavorable decision on November 29, 2007. (AR 6). On December 20, 2007, Plaintiff requested Appeals Council review. (AR 4). The Appeals Council denied Plaintiff's request for review on July 18, 2008. (AR 1). On August 19, 2008, Plaintiff filed the instant complaint.

\\

\\

---

[1] While the applications are dated August, 8, 2006, the administrative law judge's decision states that the applications were filed on July 31, 2006. (AR 9).

[2] Plaintiff subsequently amended the onset date of her disability to July 31, 2006. (AR 19-20).

[3] Plaintiff did not request reconsideration of her DIB denial and subsequently moved to dismiss her DIB claim. (AR 19).

**FACTUAL HISTORY**

**A.    Generally**

     Plaintiff was born on March 24, 1959.  (AR 83, 88).  Plaintiff received a GED and attended "a couple of years of college."  (AR 22). Plaintiff's past occupations included work as a bus driver, a cashier, and as a home attendant.  (AR 36).  Plaintiff claims disability stemming from "degenerate spinal column disease, lumb[a]r spine L5-S1 with allegations of radiculopathy to the right leg[,} . . . some complications . . . with the right hip[,]" and "obesity."  (AR 20).

**B.    Relevant Medical History**

     **1.  Treating Physicians**

     Plaintiff's medical records show that she was seen repeatedly by Universal Care during 2005 and 2006.  (AR 144-47, 150-58, 160-67, 173, 175-77).  On September 20, 2005, Plaintiff was seen by a member of the nursing staff[4] who noted that Plaintiff complained of "back pain" and sought to refill her medication, described as "HTN."  (AR 166).  On October 18, 2005, Plaintiff was seen by the same member of the nursing staff who again noted that Plaintiff complained of "[b]ack pain," and sought to refill her medication, described as "HTN."  (AR 165).  On December 13, 2005, Plaintiff was seen by Dr. Phillip Le, M.D. ("Dr. Le") and a member of the nursing staff, Kumudu Mohan, M.A. ("Nurse Mohan"),

---

     [4]  The name of this person is illegible.  (AR 166).

for "[b]ack [p]ain."  (AR 163).  On December 19, 2005, Plaintiff was seen by a member of the nursing staff, Victor Nava, M.A., for a "lipid panel." (AR 162).  On December 28, 2005, Plaintiff was seen by Dr. Le. (AR 161).  On January 3, 2006, Plaintiff was again seen by Dr. Le, who noted that Plaintiff sought refills for her medication.  (AR 160).  On January 31, 2006, Plaintiff was seen by Dr. Hung Nguyen, M.D., who noted that Plaintiff complained of "[b]ack pain" and sought to refill her medication.  (AR 158).  On May 4, 2006, Plaintiff was seen by Matt Northern, FNP/PA-C, who noted that Plaintiff complained of "back pain" and had "some lateral swelling" on her right ankle.  (AR 154).  On June 14, 2006, Plaintiff was seen by Dr. Steve T. Hwang, M.D.  (AR 175).  On July 11, 2006, Plaintiff was seen by Dr. Jeffrey Kleis, D.P.M. ("Dr. Kleis").  (AR 173).  On July 14, 2006, Plaintiff was again seen by Nurse Mohan, who noted that Plaintiff was being seen for a "[c]onsult on [b]ack pain."  (AR 150).  On August 7, 2006, Plaintiff was fitted for an orthotic by Dr. Kleis.  (AR 146).

Plaintiff's medical records further show that she did not attend scheduled medical appointments on August 16, 2005, November 23, 2005, February 6, 2006, May 15, 2006, May 17, 2006, July 31, 2006, August 15, 2006, and August 21, 2006.  (AR 144-45, 147, 153, 157, 164, 167, 177). The records further show that Plaintiff missed three additional medical appointments for which the date is not legible.  (AR 155-56, 176).

Finally, Plaintiff was seen by two doctors outside of Universal Care.   On December 19, 2005, Plaintiff was seen by Dr. C. Mark Mehringer, M.D., who noted that Plaintiff had "[d]egenerative changes" in her lumbosacral spine, but that no significant changes had occurred

4

since her last examination on February 7, 2005.  (AR 172).  On May 4, 2006, Plaintiff was seen by Dr. Martin W. Weiler, M.D., who noted that Plaintiff had a "Plantar spur" in her right ankle.  (AR 171).

### 2.  State Agency Physician

Medical consultant E. Cooper ("Cooper") reviewed Plaintiff's medical records for the Disability Determination Service ("DDS") and issued a Physical Residual Functional Capacity Assessment on September 19, 2006.  (AR 185-89).  Dr. Cooper diagnosed Plaintiff with "hypertension" and "chronic back pain." (AR 185). Dr. Cooper indicated that Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday.  (AR 186).  Dr. Cooper found that Plaintiff could push and/or pull without limitations.  (Id.).  Dr. Cooper further found that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. (AR 187). Finally, Dr. Cooper determined that Plaintiff had no manipulative limitations, visual limitations, communicative limitations, or environmental limitations.  (AR 187-88).

### 3.  Plaintiff's Testimony

Plaintiff testified at her hearing in response to questions from both the ALJ and her counsel.  (AR 21-38).  Plaintiff testified that she was 5'8" tall and 315 pounds.  (AR 21).  Plaintiff testified that she has a valid driver's license, but that she does not drive anymore because of her "back injury." (AR 23).  Plaintiff described her back

injury as "degenerative," but was "not . . . sure how [it] operates."
(Id.).  Plaintiff explained that she last worked in 2000 as a bus
driver, but that she left the job after having "issues with standing and
bending." (AR 24).  Plaintiff "decided to go to school to see if [she]
could possibly do something else," (AR 24), and attended college courses
at Long Beach City College "for two years." (AR 25, 29).  Plaintiff was
in a program that would give her a certification in "drug
rehabilitation." (AR 22).  Plaintiff testified that she attended school
full time between 2003 and 2005.  (AR 37).

Plaintiff testified that she bathes, gets dressed, and prepares
meals without assistance.  (AR 25).  Plaintiff explained that she
sometimes uses an umbrella to assist her in walking, but that her
doctors had not prescribed any assistive device. (AR 25-26).  Plaintiff
testified that she leaves the house to go grocery shopping, but "[n]ot
very often."  Plaintiff explained that she is able to walk up and down
the aisles "[f]or a short time," but that she always has the help of one
of her sons.  (AR 26)

Plaintiff described her pain as located in the "lower part of the
spine around to the leg area, all the way down to the ankle" on the
right side.  (AR 27-28).  Plaintiff further testified that she had pain
in her left leg in the "toe area." (AR 28).  Plaintiff explained that
the mobility in her left leg was worse than in her right leg.  (Id.).
Plaintiff testified that she first noticed the pain in her left leg
while she was taking college classes in 2005.  (AR 29).  Plaintiff

6

further testified that she had pain in her "right hip area" and that "[a]t times it feels dislocated" causing her to walk "crooked." (AR 29).

Plaintiff testified that she is "consistently" trying to lose weight but that "it's very difficult." (AR 30). One of Plaintiff's doctors suggested that she might have a gastric bypass, but did not recommend it. (Id.). Her doctors have also said that surgery on her back would be a "last resort." (Id.). Plaintiff explained that she tries to treat her back with "Hydrocodone" and "Soma," but that the medication is no longer effective because her body is "used to it." (AR 31).

When asked how far she could walk "in minutes," Plaintiff testified that she could only walk "maybe two yards." (AR 31). However, Plaintiff then admitted that she had walked "a block" from her car to get to the hearing and that she was capable of walking "a couple of blocks." (AR 31-32). Plaintiff next testified that she never leaves her home, but then conceded that she sometimes goes grocery shopping. (AR 31-32).

Finally, Plaintiff testified that she did not think she could do a job eight hours a day. (AR 34). Plaintiff explained that she did not think she "could last" because "standing is very painful" and "[s]itting is painful." (Id.). Plaintiff testified that she lays down during the day for "four hours periodically" and stays "in bed for days." (AR 35). Plaintiff explained that she tries not to lift more than 15 pounds because it causes sharp pain in her back. (AR 35).

1

2

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

3

4     To qualify for disability benefits, a claimant must demonstrate a
5 medically determinable physical or mental impairment that prevents him
6 or her from engaging in substantial gainful activity[5] and that is
7 expected to result in death or to last for a continuous period of at
8 least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir.
9 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the
10 claimant incapable of performing the work he or she previously performed
11 and incapable of performing any other substantial gainful employment
12 that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094,
1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

13

14     To decide if a claimant is entitled to benefits, an ALJ conducts
15 a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

16

17     (1)  Is the claimant presently engaged in substantial gainful
18          activity?  If so, the claimant is found not disabled.
19          If not, proceed to step two.

20

21     (2)  Is the claimant's impairment severe?  If not, the
22          claimant is found not disabled.  If so, proceed to step
23          three.

24

25

26     _____

27     [5] Substantial gainful activity means work that involves doing
significant and productive physical or mental duties and is done for pay
28 or profit.  20 C.F.R. §§ 404.1520, 416.910.

    (3)   Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

    (4)   Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

    (5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets his or her burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity, age, education and work experience.  Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1).  The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").

Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).   When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert.   Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

**THE ALJ'S DECISION**

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 31, 2006.   (AR 11).

At step two, the ALJ found that Plaintiff's severe impairments were a "degenerative disc disease of the lumbar spine, obesity, right plantar fasciitis, tarsal tunnel syndrome of the right foot and bilateral flat feet."   (AR 11).

At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   (AR 11).

At step four, the ALJ found that Plaintiff was "unable to perform any past relevant work."   (AR 14).   The ALJ found that Plaintiff had the residual functional capacity ("RFC") to "lift and carry 20 pounds occasionally and 10 pounds frequently with the opportunity to alternate sitting and standing at will, occasional ramp/stair climbing, no ladder/rope/scaffold climbing, occasional balance, stoop, kneel, and

crouch, no crawling and avoidance of exposure to hazardous machinery and unprotected heights." (AR 11).

Based on Plaintiff's RFC, the ALJ posed the following hypothetical to the vocational expert ("VE"):

> [P]lease assume the existence fo the following hypothetical worker, 48 years of age, 40 at onset, 12th-grade high school diploma plus 2 years of college, able to lift and carry occasionally 20 pounds, frequently 10, able to stand and walk – let's make a straight sit/stand option at will. Postural limitations, occasional use of stairs, never ladders, ropes or scaffolds, occasional balancing, occasional stooping, occasional kneeling, occasional crouching, no crawling, and let's avoid exposure to hazardous machinery and unprotected heights. All right. Could such a hypothetical worker do any of the jobs you've identified as [Plaintiff's] past work?

(AR 37).

The VE responded that "the job of cashier would be one that would be within the hypothetical." (AR 38). The ALJ then questioned Plaintiff about her prior work as a cashier. (Id.). Plaintiff testified that she only worked part-time as a cashier and that she was paid minimum wage. (Id.). The ALJ apparently concluded that

11

Plaintiff's ability to work as a cashier did not qualify as a substantial gainful activity. (AR 39).[6]

The ALJ asked the VE to assume that Plaintiff's ability to work as a cashier did not qualify as a substantial gainful activity and asked if there were any other jobs "that such a hypothetical worker could perform." (AR 39). The VE responded that such a hypothetical worker could work as a parking lot attendant in a booth, a ticket seller, and an assembler. (Id.). At step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (AR 14).

Based on the above RFC and the testimony of the VE, the ALJ concluded that Plaintiff could work as a parking lot attendant, a ticket seller, and an assembler. (AR 15). Accordingly, the ALJ determined that "a finding of 'not disabled' [was] . . . appropriate." (Id.).

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.

---

[6] At step five, the ALJ asked the VE to assume "that the cashier's job was not SGA." (AR 39). In his decision, the ALJ states that in response to his hypothetical question, the VE testified that "such a hypothetical individual could not perform the claimant's past relevant work." (AR 14).

Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id.  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

**DISCUSSION**

**A.**   **The ALJ Appropriately Considered The Limitations Found By Nurse Mohan**

Plaintiff asserts that the ALJ failed to properly consider the opinion of Nurse Mohan regarding her physical and mental impairments. (Jt. Stip. at 3).  This Court disagrees.

As an initial matter, Plaintiff argues that Nurse Mohan is entitled to treating physician status.  (Jt. Stip. 3-4).  In general, "[t]he opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." Orn v. Astrue, 495

13

1   F.3d 625, 632 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715,

2   725 (9th Cir. 1998)).  An examining physician's opinion, in turn,

3   generally is afforded more weight than a nonexamining physician's

4   opinion.  Orn, 495 F.3d at 631.

5

6       However, Nurse Mohan does not qualify as a treating physician

7   because she is not a licensed doctor.  (AR 150); see Shontos v.

8   Barnhart, 328 F.3d 418, 426 (8th Cir. 2003) (holding that "a nurse

9   practitioner and certified therapist" did not qualify as treating

10  physicians because they were not licensed doctors); see also Benton v.

11  Barnhart, 331 F.3d 1030, 1036-37 (9th Cir. 2003) (citing Shantos).

12  Indeed, Nurse Mohan signed the Primary Care Progress Record as a member

13  of the nursing staff and the initials "M.A." following her name indicate

14  that she has a Master of Arts, not a medical degree.  (AR 150).

15  Pursuant to Social Security Administration regulations, an acceptable

16  medical source is required to establish the existence of a medically

17  determinable impairment.  20 C.F.R. § 416.913(a).  An acceptable medical

18  source is defined as a "[l]icensed physician (medical or osteopathic

19  doctors)[.]"  § 416.913(a)(1).  A nurse without a medical degree falls

20  into the category of "[o]ther sources" which are permissible to show the

21  severity of an impairment, but not to establish the existence of an

22  impairment.  § 416.913(d); see also Shontos, 328 F.3d at 426 ("As a

23  nurse-practitioner and certified therapist, Ms. Bookmeyer and Ms.

24  Flaherty fit the criteria of 'other' medical sources, who are

25  appropriate sources of evidence regarding the severity of a claimant's

26  impairment, and the affect of the impairment on a claimant's ability to

27  work.").  Indeed, the ALJ was entitled "to accord opinions from other

28

14

1  sources less weight than opinions from acceptable medical sources."

2  Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996).

3

4      Regardless of the appropriate weight, Nurse Mohan did not

5  "establish[] an opinion that clearly identifies the Plaintiff's physical

6  and mental problems," as Plaintiff claims. (Jt. Stip. at 4). Plaintiff

7  cites to page 150 of the record and states that Nurse Mohan "opined that

8  the Plaintiff is unable to sit" and "also noted that the Plaintiff gets

9  angry, occasionally has tears, and is depressed." (Jt. Stip. at 3).

10  Page 150 of the record is a Primary Care Progress Record dated July 14,

11  2006, which appears to contain the handwritten notes of Nurse Mohan.

12  (AR 150).  It is unclear whether these notes are merely Plaintiff's

13  complaints or rather if they reflect Nurse Mohan's conclusions about

14  Plaintiff's medical condition. (Id.). While the handwritten notes are

15  largely illegible, the Court is able to discern the following relevant

16  words and phrases: (1) "[c]onsult on [b]ack pain"; (2) "can't sit @

17  school"; (3) "[g]ets [a]ngry"; (4) "occasionally teary"; (5) "[b]ack

18  [p]ain"; and (6) "[d]epression."  (Id.).  Even assuming that these

19  isolated words and phrases represent Nurse Mohan's conclusions about

20  Plaintiff's medical condition, they do not explain how these impairments

21  "significantly limit[] [Plaintiff's] physical or mental ability to do

22  basic work activities," 20 C.F.R. § 416.920(c), and they provide no

23  indication that these impairments lasted "a continuous period of at

24  least 12 months." § 416.909; see also Batson v. Comm'r of the SSA, 359

25  F.3d 1190, 1195 (9th Cir. 2004) ("The ALJ discounted [the treating

26  physician's] view because it was in the form of a checklist, did not

27  have supportive objective evidence, was contradicted by other statements

28  and assessments of [the plaintiff's] medical condition, and was based

15

on [the plaintiff's] subjective descriptions of pain."); <u>Matney v.</u>
<u>Sullivan</u>, 981 F.2d 1016, 1020 (9th Cir. 1992) ("The ALJ need not accept
an opinion of a physician — even a treating physician — if it is
conclusionary and brief and is unsupported by clinical findings.").

Plaintiff argues that the ALJ failed to consider Nurse Mohan's
notation, "can't sit @ school." (Jt. Stip. at 3, 7). However, the RFC
reflects limitations on Plaintiff's ability to remain seated by
including "the opportunity to alternate sitting and standing at will."
(AR 11). Indeed, the ALJ specifically referenced Nurse Mohan's July 14,
2006 Primary Care Progress Record. (AR 13) ("The claimant complained
of back pain on July 14, 2006 and was given pain medications." (footnote
omitted)). Moreover, the state agency physician opined that Plaintiff
could sit "about 6 hours in an 8-hour workday." (AR 186). Indeed,
Plaintiff testified that she was able to attend college "for two years"
after the onset of her impairment, (AR 25), and was able to attend
school full time between 2003 and 2005. (AR 37). Plaintiff never
testified that she could not sit at all, but rather explained that her
problem "was sitting for <u>prolonged</u> periods." (AR 25) (emphasis added).

Plaintiff also argues that the ALJ failed to consider Nurse Mohan's
notations, "[g]ets [a]ngry," "occasionally teary," and "[d]epression."
(Jt. Stip. at 3, 7). Plaintiff contends that she "was clearly being
treated for depression," (Jt. Stip. at 3), and cites to the Disability
Report where she wrote that she was taking "Imipramine" for
"depression." (AR 105, 134). However, neither Plaintiff's reference
to being treated for depression nor Nurse Mohan's notations demonstrate
that Plaintiff had depression that "significantly limits [her] physical

16

1  or mental ability to do basic work activities," 20 C.F.R. § 416.920(c),
2  or that the depression lasted "a continuous period of at least 12
3  months." § 416.909; see also Batson, 359 F.3d at 1195 ("The ALJ
4  discounted [the treating physician's] view because it was in the form
5  of a checklist, did not have supportive objective evidence, was
6  contradicted by other statements and assessments of [the plaintiff's]
7  medical condition, and was based on [the plaintiff's] subjective
8  descriptions of pain."); Matney, 981 F.2d at 1020 ("The ALJ need not
9  accept an opinion of a physician — even a treating physician — if it is
10 conclusionary and brief and is unsupported by clinical findings.").
11 Indeed, these are the only references to depression anywhere in the
12 record that have been identified by the Plaintiff and the Court is
13 unable to locate any others. (Jt. Stip. at 3-4, 7).

14

15     Particularly telling is the fact that Plaintiff testified before
16 the ALJ regarding her impairments and never once mentioned depression.
17 (AR 20-38). To the contrary, Plaintiff testified that she bathes,
18 dresses herself, prepares meals, goes grocery shopping, and took college
19 courses for two years, (AR 25-26, 29), all indications that her
20 depression does not prevent her from engaging in normal activities like
21 work. Additionally, when asked by the ALJ what severe impairments
22 Plaintiff was asserting, Plaintiff's counsel also never mentioned
23 depression. (AR 20).

24

25     In sum, the Court finds that the ALJ appropriately considered the
26 limitations found by Nurse Mohan. Moreover, even if the ALJ erred, the
27 error was harmless because the ALJ incorporated limitations on sitting
28 into the RFC determination. See Stout v. Comm'r, SSA, 454 F.3d 1050,

17

1056 (9th Cir. 2006) ("[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."). Thus, no remand is necessary.

**B.     There Was No Evidence That Plaintiff's Medication Caused Side Effects That Impaired Her Ability To Work**

Plaintiff asserts that the ALJ failed to properly consider the side effects of Plaintiff's medications. (Jt. Stip. at 8). This Court disagrees.

Plaintiff relies solely on the Disability Report where she indicated the following side effects for her medications: (1) "sleepiness," "dizziness," "vertigo," forgetfulness," "itchy feeling," "anger," and "stomach irritation." (AR 105); (see Jt. Stip. at 7-9). Plaintiff argues that the ALJ was "obligated to consider Plaintiff's claims of side effects." (Jt. Stip. at 11). However, Plaintiff bore the burden of proving that the side effects of her medication were disabling. See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985) ("A claimant bears the burden of proving that an impairment is disabling."). Indeed, Plaintiff's isolated references to side effects in the Disability Report do not demonstrate that the side effects "significantly limit[ed] [her] physical or mental ability to do basic work activities," 20 C.F.R. § 416.920(c); see also Miller, 770 F.2d at 849 (claimant failed to meet burden of proving that an impairment is disabling where he produced no clinical evidence showing that his prescription narcotic use impaired his ability to work). Other than her

18

reference to these side effects in the Disability Report, Plaintiff fails to make any other reference to side effects during the administrative process.

Moreover, the Court is unable to locate and the Plaintiff has failed to identify any medical evidence of side effects in the record. (Jt. Stip. at 7-9, 11-12); see also Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985) ("[A] claimant's self-serving statements may be disregarded to the extent they are unsupported by objective findings."). Again, in her testimony before the ALJ, Plaintiff's never mentioned suffering from side effects.  (AR 20-38).

In sum, the Court finds that Plaintiff failed to meet her burden of proving that her medication caused side effects that impaired her ability to work.  Additionally, even if the ALJ erred by failing to note the potential side effects of Plaintiff's medication, the error was harmless because there was no evidence of the alleged side effects limiting her ability to work.  See Stout, 454 F.3d at 1056 ("[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."). Thus, no remand is necessary.

**C.**   **Plaintiff Did Not Assert That She Suffered From A Mental Impairment**

Plaintiff asserts that the ALJ failed to properly consider the severity of her mental impairment.  (Jt. Stip. at 12).  This Court disagrees.

Plaintiff argues that the ALJ should have made specific findings regarding her mental impairment because she "indicated that she had been seen by a doctor for emotional or mental problems that limit her ability to work" and "also indicated that she takes Imipramine for treatment of her depression." (Jt. Stip. at 12).  The "Disability Report" form asked Plaintiff whether she had "been seen by a doctor/hospital/clinic or anyone else for emotional or mental problems that limit [her] ability to work" and Plaintiff wrote "Yes." (AR 103).  However, when asked to list the doctors who treated her for these emotional or mental problems, Plaintiff wrote that she had received treatment for "extreme pain in back/back/veins in leg," "back, hypertension, hyperlipidemia," and "domestic violence." (AR 104).  Plaintiff did not list any treatment for depression nor did she identify any doctors or psychologists that she saw for her alleged mental condition.  (Id.).  Moreover, when asked to list the "illnesses, injuries, or conditions that limit [her] ability to work," Plaintiff wrote "spinal deterioration/hypertension/cholesterol/degenerative arthritis of the spinal cord/chronic back pain/fractured vertebrae/right leg/hip/hyperlipidemia/obesity." (AR 101).  Plaintiff did not list depression or any other mental condition.  (Id.).

Moreover, as set forth above, Plaintiff testified before the ALJ and never mentioned depression. (AR 20-38). Indeed, when asked by the ALJ what severe impairments Plaintiff was asserting, Plaintiff's counsel also never mentioned depression or any other mental condition. (AR 20). Given that neither Plaintiff nor her counsel perceived depression as limiting her ability to work, (AR 101), the ALJ was not obligated to make specific findings regarding Plaintiff's mental impairment. Additionally, even if the ALJ erred, the error was harmless because there was no evidence that any mental impairment limited Plaintiff's ability to work. See Stout, 454 F.3d at 1056. Thus, no remand is necessary.

**D.    The ALJ Appropriately Considered Plaintiff's Obesity**

Plaintiff asserts that the ALJ failed to properly consider her obesity. (Jt. Stip. at 15-18). This Court disagrees.

Obesity is no longer a listed impairment, nor was it at the time of the ALJ's decision on May 8, 2001. See Revised Medical Criteria for Determination of a Disability, Endocrine System and Related Criteria, 64 F.R. 46122 (1999) (effective October 25, 1999) ("We are deleting listing 9.09, "Obesity," from appendix 1, subpart P of part 404, the "Listing of Impairments" (the listings)."). However, an ALJ must still determine the effect of obesity upon a claimant's other impairments and its effect on her ability to work and general health. Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003).

Contrary to Plaintiff's claim, the ALJ specifically noted Plaintiff's obesity when he rejected the opinion of the state agency physician and crafted a more limited RFC:

> [G]iven the claimant's history of lumbar spine disc disease as shown by the December 2005 x-rays as well as the claimant's obesity and bilateral feet problems, the undersigned gives the claimant the benefit of the doubt and rejects the assessment from the Disability Determination Services medical consultant. The undersigned finds, instead, that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently with the opportunity to alternate sitting and standing at will, occasional ramp/stair climbing, no ladder/rope/scaffold climbing, occasional balance, stoop, kneel, and crouch, no crawling and avoidance of exposure to hazardous machinery and unprotected heights.

(AR 13).

Substantial evidence in the record supports the conclusion that the ALJ in this case properly considered Plaintiff's obesity. The ALJ reviewed medical records from treating doctors that noted obesity. The treating doctors, however, never restricted Plaintiff because of that condition. Instead, they instructed Plaintiff numerous times to exercise, lose weight, and eat a healthy or low-salt diet. (See AR 158 ("Obesity - Wt. reduction advise"); AR 160 ("Obesity" - "Enroll pt. in universally fit [exercise program](done)"; AR 166 ("Obesity"

"[recommend] low-salt diet" "exercise"). Plaintiff's doctors were not limiting her due to her obesity, but were encouraging her to lose weight and exercise.

The record does not show that Plaintiff's obesity prevented her from engaging in normal work-like activities. Furthermore, as the ALJ considered Plaintiff's obesity and its impact on her other impairments when he gave her a more limited RFC, the Court finds that the ALJ did not commit error in his consideration of Plaintiff's obesity. Accordingly, no remand is necessary.

**E.   The Hypothetical Contained All Limitations Supported By Substantial Evidence**

Plaintiff asserts that the ALJ did not pose a full hypothetical to the VE because the hypothetical did not contain mental limitations. (Jt. Stip. at 20-22). This Court disagrees.

As set forth above, see supra Parts A & C, the record does not contain substantial evidence of a mental impairment. See Osenbrock, 240 F.3d at 1163 ("An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations."). Because the record does not contain substantial evidence of a mental impairment, the ALJ was not obligated to include such limitations in the hypothetical. See Osenbrock, 240 F.3d at 1164 ("Because [the plaintiff] did not present any evidence that he suffers from sleep apnea, diabetes, organic brain disorder, or hepatitis in support of his disability claim, the ALJ did

not err in failing to include these alleged impairments in the hypothetical question posed to the VE."). Thus, no remand is necessary.

## CONCLUSION

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[7] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 7, 2009.

/S/

_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

---

[7] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

24